## No. 23077.

FRANK LOUIS FALGOUT v. THE PEOPLE OF THE
STATE OF COLORADO.
(459 P.2d 572)

Decided September 22, 1969. Rehearing denied October 27, 1969.

34

WILLIAM CHISHOLM, Public Defender, EDWARD H. SHERMAN, Public Defender, TRUMAN E. COLES, Deputy, DAVID G. MANTER, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

THE plaintiff in error, Frank Louis Falgout, was charged by direct information on March 14, 1966, with the crime of robbery. He was detained in the Denver County Jail until he was brought to trial on November 17, 1966. This proceeding, in which the defendant carried on his own defense, resulted in a mistrial due to an alleged error committed by the defendant. Falgout was tried again for the crime of robbery on November 29, 1966. He again served as his own counsel and was found guilty by the jury.

Falgout contends here (1) that the trial judge abused his discretion in declaring a mistrial in the first trial and that the second trial therefore put the defendant twice in jeopardy for the same offense; (2) that the use of a direct information instead of a grand jury indictment was a violation of the constitutional rights of the defendant, and that the information was insufficient to properly apprise the defendant of the crime with which he was charged; (3) that the defendant was denied his right to a speedy trial; (4) that the court was in error in allowing certain testimony regarding exhibits, that the court was in error in admitting certain items into evidence, and that the severe limitations placed by the court upon the defendant in the conduct of his defense amounted to harassment and prejudice on the part of the court; (5) that certain evidence introduced by the People was the product of an unlawful arrest, and illegal search and seizure; and (6) that the court was in error in refusing to give defendant's Tendered Instruction No. 1. We do not agree and therefore affirm the judgment of the trial court.

I.

We deal first with the question of whether the judge at the first trial abused his discretion in declaring a mistrial. The attorney for the People had established the identity of the defendant as the man who had perpetrated the robbery through the testimony of the victim, a Mr. Riviera. During the cross-examination of Riviera, the defendant asked him whether he had had a conversation with defendant's sister. After receiving an affirmative answer, defendant then asked: "Did you tell her you were going to drop the charges?" This question was objected to before it could be answered. The trial judge declared a mistrial on the basis that the question was irregular and prejudicial.

 The defendant contends that the question which prompted the mistrial did not constitute an irregularity as found by the trial court. We do not agree. The issue of whether a trial judge has properly exercised his discretion in declaring a mistrial has been characterized by this Court in *Brown v. People,* 132 Colo. 561, 291 P.2d 680 as a question of "legal justification." In *Brown* it was pointed out that an irregularity, in order to amount to legal justification, does not have to consist of prejudicial error.

"* * * While the cause for the order must be substantial and real, it need not be vital. It need only be such as could affect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding. When such an irregularity prevails and when in the exercise of his sincere judgment he declares a mistrial, it must be said that he has fairly exercised his judicial discretion and that his action is properly and legally justified. * * *"

It is argued by the defendant that the question asked was appropriate to lay a foundation to impeach the witness by proof of a prior inconsistent statement, and

that when asked pursuant to that objective, there was nothing irregular or objectionable about it. While the record of the hearing before the judge on the objection and motion for mistrial does reveal that the defendant had asked the question in order to lay a foundation for impeachment, the record further reveals that the defendant had not spoken to his sister to whom the alleged statement was made and had no knowledge of what statements, if any, she could testify to as having been made by the defendant. Since the record shows that the defendant was unable to make an offer of proof concerning any inconsistent statements made by Riviera, we conclude that the trial judge was correct in determining that an irregularity did exist.

The defendant argues further that the trial judge abused his discretion in declaring a mistrial because the harmful effect of the irregularity could have been corrected by a proper instruction to the jury to disregard. The granting or denying of a motion for mistrial is a matter of discretion with the trial judge and will not be overruled by this Court unless an abuse of that discretion is shown. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399. One reason for the restraint exercised by this Court in its role as reviewing authority is that the trial court is in a better position to weigh the effect of an irregularity on the jury. *Maisel v. People, supra.* The record in this case reveals that an irregularity existed, and that the trial judge determined that the effect of the irregularity could not be erased by an instruction to the jury to disregard the question. We cannot say that the order of the trial judge declaring a mistrial was not legally justified.

II.

The defendant contends that C.R.S. 1963, 39-5-1, which authorizes the district attorney to proceed by direct information, is in derogation of article II, section 8 of the Colorado constitution which provides:

"Until otherwise provided by law, no person shall, for a

felony, be proceeded against criminally otherwise than by indictment. . . ."

The defendant argues that while section 8 does allow legislative modification of the requirement of proceeding by indictment, decisions by this Court have made it clear that any such modification must include some kind of review and protection between accusation and criminal trial. In support of his position, defendant cites *In re Lowrie*, 8 Colo. 499, 9 P. 489; *In re Dolph*, 17 Colo. 35, 28 P. 470; and *Nesbit v. People*, 19 Colo. 441, 36 P. 221.

The only thing that article II, section 8 does is to direct that criminal proceedings must be initiated by indictment and to authorize the legislature to provide alternative methods of proceeding. Neither *Dolph* nor *Nesbit* prohibits the legislature from providing that an information shall be an alternate method of initiating a criminal proceeding.

There is no federal constitutional requirement of a preliminary hearing before proceeding by information. *Goldsby v. United States*, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343; *Pearce v. Cox*, 354 F.2d 884 (10th Cir. 1963); *Holt v. People*, 23 Colo. 1, 45 P. 374. The constitutionality of proceeding by direct information without preliminary hearing was fully considered by this Court in *Holt v. People, supra,* and *Noble v. People*, 23 Colo. 9, 45 P. 376. The court expressly found that proceeding by direct information with prior leave of the court as provided by our statute did not violate any of the constitutional rights of the accused.

The defendant contends that because the district attorney is free under 39-5-1 to select several methods of initiating a criminal proceeding against the accused, that the statute creates an unequal system of criminal justice, thus failing to provide for equal protection of the law as guaranteed by the Fourteenth Amendment.

In *In re Dolph* this Court, after considering the effect of the Equal Protection Clause, stated: "No constitutional provision has been cited forbidding indictments and in-

formations as concurrent remedies when surrounded by proper regulations and safeguards." The court made it clear what kind of "regulations and safeguards" it had in mind when it further stated: "So far as the legislation applicable to the case under consideration is concerned, neither the prosecuting attorney nor any other officer is authorized to exercise an arbitrary discretion in the matter of instituting criminal prosecutions."

In arguing that proceeding by direct information is not equal to other methods of proceeding, what the defendant fails to note is the requirement in 39-5-1 that the district attorney may proceed by direct information *only* with prior leave of the court. In *Walker v. People*, 22 Colo. 415, 45 P. 388, this Court held that failure to obtain prior leave of the court renders the information fatally defective. In *Walker* it was said:

"\* \* \* To protect the rights of the citizen and guard him against oppression and malice, the legislature had made it necessary that a judicial order shall be obtained before a charge can be preferred...."

■ The legislature has seen fit to provide concurrent methods of proceeding against a criminal defendant. In each method there are provisions to protect the accused against discrimination and oppression on the part of the district attorney. It is our decision that the portion of 39-5-1 which authorizes initiation of criminal proceedings by direct information is not a violation of due process or equal protection of the law.

■ The defendant further contends that the information filed against him did not properly inform him whether he was charged with robbery or "armed" robbery. We find no merit in his contention.

The information in this case charges the defendant with the crime of robbery as that crime is defined in C.R.S. 1963, 40-5-1(1). Nowhere in the information is the defendant charged with being armed with a dangerous weapon or with any other act which would constitute a charge of aggravated robbery under our statute.

C.R.S. 1963, 40-5-1(2). We find that the information was cast in the language of the statute under which the defendant was charged and clearly apprised him that he was charged with the crime of robbery. See *Gallegos v. People*, 166 Colo. 409, 444 P.2d 267.

III.

The information charging Falgout with robbery was filed on March 18, 1966, and he was brought to trial on November 17, 1966. Defendant claims that this delay of eight months denied him due process of law and his right to a speedy trial as guaranteed by article II, section 16 of the Colorado constitution and by the Sixth and Fourteenth Amendments to the United States Constitution. We do not agree.

During this period of confinement before trial, the defendant filed a writ of habeas corpus in the federal district court. The court conducted a hearing on the writ after the defendant had been brought to trial in the state court. The federal court had before it all of the evidence that is contained in the record on appeal that pertains to the question of speedy trial. The issue before the federal court was whether the delay of eight months constituted a delay so unreasonable as to deprive the defendant of due process. The court found no denial of due process and denied the writ. *Falgout v. Trujillo*, 270 F.Supp. 685 (D. Colo. 1966), *aff'd.*, 380 F.2d 376 (10th Cir. 1967), *cert. denied,* 389 U.S. 1010, 88 S.Ct. 575, 19 L.Ed.2d 609.

In reaching this decision, the court considered four factors pertaining to the issue: (1) the length of the delay, (2) the reason for the delay, (3) the prejudice to the defendant, and (4) waiver by the defendant. That court concluded that the reason for the delay was that the docket of the trial court was extremely congested, and that the defendant had failed to make any showing that the eight-month delay had in any way interfered with the preparation and presentation of his defense.

The decision of the federal district court is

binding on this Court as the law of the case on the issue of due process of law under the federal constitution. Likewise, we find that the conclusions of the federal court, although not controlling, are persuasive on the issue of speedy trial under the provisions of our state constitution. Where the issue of speedy trial has involved the requirements of article II, section 16 of the Colorado constitution, this Court has made it very clear that a speedy public trial is a relative concept depending upon the circumstances of each case and consistent with the court's business, and the burden is upon the defendant to prove that he has been denied an expeditious trial to his prejudice. *Maes v. People,* 169 Colo. 200, 454 P.2d 792; *Medina v. People,* 154 Colo. 4, 387 P.2d 733, *cert. denied* 379 U.S. 848, 85 S.Ct. 88, 13 L.Ed.2d 52. The four factors considered by the court in *Falgout v. Trujillo, supra,* relate to our constitutional concept of speedy trial. There is nothing in the record on appeal that would compel us to reach a different decision on these factors. We concur that the trial date was set in a manner consistent with the court's business, and that the defendant has failed to establish prejudice resulting from the delay.

▮▮▮▮▮ There remains the question of whether the right of the defendant to a speedy trial under the Sixth Amendment has been violated. The Sixth Amendment guarantee to a speedy trial has been extended to protect defendants in state criminal actions. *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed. 2d 1. There is nothing in the Sixth Amendment guarantee of a speedy trial that would justify a different decision here. The safeguard is no more restrictive than that found in our own state constitution as interpreted by this Court. The United States Supreme Court has characterized the speedy trial provision in the Sixth Amendment as follows:

"* * * However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move

at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances . . . . [T]he essential ingredient is orderly expedition and not mere speed.' " *United States v. Ewell,* 383 U. S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630-31.

The present record reveals a delay consistent with the orderly business of the court and no evidence that the delay was purposeful or oppressive, or that it resulted in such prejudice to the defendant that he was not accorded a fair trial in accordance with his constitutional rights.

IV.

 The defendant first argues that the trial judge erred in permitting testimony to be elicited by the district attorney concerning certain currency even after such testimony was declared inadmissible. The record reveals no error. The defendant made no objection to the admission of testimony relating to the currency, and the court on its own initiative restrained the district attorney from questioning further on that subject after it became clear to the court that the district attorney would be unable to properly identify the exhibit in order to have it admitted into evidence.

 The defendant argues that the trial judge was in error in admitting the victim's watch into evidence, on the basis that no proper foundation was laid. However, the record clearly reveals that the victim identified the watch offered into evidence as his own watch and as being the watch which he handed to the robber. Officer Rennick testified that the watch offered into evidence was the watch he removed from the police car after Falgout had been taken to the police station. Such identification was sufficient to connect the watch with both

the crime and the defendant. See *Vigil v. People,* 160 Colo. 201, 415 P.2d 863.

 Finally, the defendant argues that the trial judge severely limited the defendant in his conduct of the case, and that this conduct amounts to a showing of harassment and prejudice on the part of the court. The defendant does not direct our attention to any particular instance, and the Court in its examination of the record, can find nothing to substantiate this allegation.

### V.

The defendant argues that there was nothing in the facts and circumstances surrounding his arrest which would justify the finding by the trial judge that the policemen who arrested him were acting with probable cause.

 This Court has had many opportunities to define the term "probable cause." *Martinez v. People,* 168 Colo. 314, 451 P.2d 293; *Lavato v. People,* 159 Colo. 223, 411 P.2d 328; *Gonzalez v. People,* 156 Colo. 252, 398 P.2d 236. In those cases the Court noted, and we again reiterate, that probable cause is not to be measured by the yardstick of legal technicality, but rather by the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act.

 Keeping in mind these considerations, we conclude that the trial court was correct in deciding that the policemen were acting on probable cause. The arresting officers received a call that a robbery was in progress. They received a description of the suspect which was that the person was a white male, six feet tall, slender, with dark hair and hollow cheeks, and wearing a dark overcoat. Within moments after receiving the call, they encountered the defendant emerging from an alley in the vicinity of the robbery with a dark bundle under his arm. The suspect was observed to answer the description received over the radio. Considering these circumstances, and particularly the proximity in time and place of the

arrest to the robbery, we find that the arrest of the defendant was made with probable cause.

We note that *Gatlin v. United States,* 326 F.2d 666 (D.C. Cir. 1963) relied upon by the defendant is not sufficiently close in facts and circumstances to require a different result. In *Gatlin* the arrest occurred more than an hour after the crime and more than a mile from the place where the crime was committed.

We further note that no issue relating to the extent of the search is raised by either the defendant or the record, and we affirm on the basis that the arrest was legal.

## VI.

The argument of the defendant that the trial judge was in error in rejecting the defendant's Tendered Instruction No. 1 was not raised by the defendant in either his motion for judgment of acquittal or new trial or in his later motion supplemental thereto. Where a question has not been presented in a motion for new trial, it will not be considered by this Court on a writ of error. Colo. R. Crim. P. 37(b); *Valdez v. People,* 167 Colo. 180, 446 P.2d 423; *Dickson v. People,* 82 Colo. 233, 259 P. 1038. We have examined the question raised by the defendant and the record in this case and are of the opinion that the defendant does not present a question of plain error or defects affecting substantial rights which would justify this Court in taking notice at length of the question. See *Shier v. People,* 116 Colo. 353, 181 P.2d 366. Suffice it to say we have examined the argument and have found it lacking in merit in light of the circumstances and the instructions given by the trial judge taken as a whole.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.