**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Jack EICHELBERGER, Defendant–Appellee.**

**No. 80SA159.**

Supreme Court of Colorado, En Banc.

Dec. 22, 1980.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff–appellant.

Lawrence J. Schulman, Denver, for defendant–appellee.

ERICKSON, Justice.

The prosecution, pursuant to Rule 4.1(a), C.A.R., has taken an interlocutory appeal to review an order suppressing certain evidence and statements made by the defendant. The district court concluded that there was not probable cause to justify the warrantless arrest of the defendant, and ordered that the statements and evidence seized be suppressed as fruit of the illegal arrest. We do not agree with the district court. In our view, probable cause to arrest was established.[1] Therefore, we reverse the district court's ruling on the suppression of the evidence and statements, and remand to the district court for further proceedings consistent with this opinion.

On September 9, 1979, a criminal complaint was filed in the county court of the City and County of Denver charging the defendant, Jack L. Eichelberger, and Coyote Lightfeather, with arson and with the murder of Erwin Bell. Following a preliminary hearing, the defendants were bound over to the district court to answer charges of murder in the first degree and arson in the first degree. The defendants were subsequently granted separate trials and entered pleas of not guilty.

The defendant, Eichelberger, filed a motion to suppress statements and physical evidence which he claimed were the product of an illegal arrest. An extended evidentiary hearing was held on his motion to suppress. The trial judge made findings of fact and conclusions of law and denied the motion to suppress. Thereafter, a motion to reconsider ruling on defendant's motion

---

1. The trial court correctly determined that the defendant was properly advised of his rights, and that his statements to the police were vol- untary and that the motion to suppress should be denied.

to suppress statements and evidence was filed, supported by *People v. Bookman*, Colo.App., 615 P.2d 44 (1980), *cert. granted*, No. 80SC116 (1980). The trial judge, after reviewing the testimony at the preliminary hearing and the suppression hearing, and adopting the rationale of *People v. Bookman, supra*, granted the defendant's motion to suppress. In our view, *People v. Bookman, supra*, which is before us for review on certiorari, is not applicable to the facts in this case.

Probable cause is the *touchstone* for measuring the right to arrest without a warrant. The circumstances in every case must be considered to determine the existence of probable cause and the reasonableness of the police conduct. *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974). The burden of proof was on the prosecution to establish the existence of probable cause to arrest the defendant without a warrant. *People v. Gomez*, 193 Colo. 208, 563 P.2d 952 (1977), *People v. Bates* 190 Colo. 291, 546 P.2d 491 (1976). In *Bates*, the Court said:

"Section 16–3–102(1)(c), C.R.S.1973, provides that a peace officer may make a warrantless arrest under certain circumstances when he has probable cause to believe that an offense has been committed by the person to be arrested. As we said in *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236, *cert. denied* 381 U.S. 945, 85 S.Ct. 1788, 14 L.Ed.2d 709:

'Probable cause exists where the facts and circumstances *within the officers' knowledge*, and of which they had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.... In dealing with probable cause, one deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act....'" (Emphasis added.) *Id.* at 293, 546 P.2d 491.

At the conclusion of the first hearing on the defendant's motion to suppress, the trial judge made the following findings of fact, which we conclude, establish probable cause to arrest the defendant:

"[FINDINGS OF FACT] In the early evening hours of September 5, 1979, Denver Police received a call to investigate a suspected homicide at 16 W. 10th Avenue in Denver, Colorado. Detectives Dominguez and Estrada responded shortly before 8:00 p. m., along with several other police officers, and upon arrival, these detectives viewed a body covered with a sheet, which had been pulled into the hallway from apartment 208. It was determined that the body was that of Erwin Bell, who lived in apartment 208, and that Mr. Bell had died. They spoke briefly with Detective Wyckoff, and then split up to interview witnesses.

"Detective Dominguez spoke with Mrs. Elaine Gonzales, the apartment manager, who related excitedly that there were two people the police should be looking for–an Indian man on crutches and Jack Eichelberger. She said that Mr. Eichelberger lived with the victim, Mr. Bell, in apartment 208, and that Mr. Bell had told her earlier in the day he and Mr. Eichelberger and the Indian had had a fight. She indicated that all three men were alcoholics, and fought a great deal, but that Mr. Bell was a very nice man. She described Jack Eichelberger as being in his late forties, tall and slender. She also indicated that she knew the Indian, but did not know his name.

"Detective Estrada spoke with Grover Horton, who told him that he saw two people leaving apartment 208 shortly before the fire started. One was a person he knew, named Jack, and the other was an Indian, whom he had seen before. He supplied a physical description of Jack as being tall and slender and middle aged.

"Each officer interviewed some other witnesses, and then they met to compare their findings. After trading the above information, and discussing the situation with Detective Wyckoff and Chief Deputy District Attorney Christopher Munch, a decision was made to seek the arrest of Jack and the Indian for investigation of

homicide. Accordingly, Detective Dinan and Sergeant Woods, who were organizing the efforts of other police officers in the area, were instructed to see that the information was relayed to the police dispatcher and to other officers. Sergeant Woods then went back to see Mrs. Gonzales, and they proceeded up Broadway in search of the two individuals, as Mrs. Gonzales told him that she had seen the two people on her way home from work shortly before arrival at the scene. Defendant Coyote Lightfeather was found sitting on a bus bench at 11th and Broadway, alone.

"In response to a radio call, Officer Robert Dill met Officers Allendorf and Bender at the corner of 11th and Broadway, after their contact with Defendant Lightfeather and he was told by them that he should attempt to find a person named 'Jack' who was thought to be at the Collins Bar. He was also given a description: about forty, tall, wearing a colostomy bag. He went to the bar, asked the barmaid if she knew anyone matching that description, and the barmaid pointed out the defendant, who was sitting at a table with several other persons. Officer Dill went over to the table, obtained identification from Mr. Eichelberger, and then took him outside and arrested him."

▓ An extended discussion of the fellow officer rule is not necessary. *People v. Hubbard,* 184 Colo. 225, 519 P.2d 951 (1974). In assessing probable cause, all the evidence within the knowledge of the police, as a whole, may be considered. *People v. Nanes,* 174 Colo. 294, 483 P.2d 958 (1971). *Accord People v. Baca,* Colo., 600 P.2d 770 (1979); *People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978). In *People v. Nanes, supra,* we set forth the following test to be used in considering whether information available to the police under the fellow officer rule provides probable cause to arrest:

"It is not necessary for the arresting officer to know of the reliability of the informer or to be himself, in possession of information sufficient to constitute probable cause, provided he acts upon the direction or as a result of communication with a brother officer or that of another police department and provided the police as a whole are in possession of information sufficient to constitute probable cause to make the arrest." *Id.* 174 Colo. at 300, 483 P.2d 958.

Bell was found with stab wounds on a burning mattress which had been saturated with a flammable liquid. Firemen at the scene informed the police that the fire had been deliberately set. The discovery of Bell's body with his pants on fire and the mattress in flames would cause a man of reasonable caution to believe that the offenses charged had been committed. *People v. Bates, supra.* Section 16–3–102(1)(c), C.R.S.1973. Police interviewed several witnesses for leads, pooled their information, and concluded that there was probable cause to arrest the defendant.

The trial judge properly found in the first instance that:

"[T]he 2–prong requirement of *People v. Nanes* citations omitted, has been met here since (1) information sufficient to constitute probable cause was possessed by those ordering the arrest at the time they made the arrest decision, (2) Officer Dill's actions were a direct result of the decision conveyed through the chain of command, and (3) Officer Dill's personal observations of defendant matched the physical description he had been given by Officers Bender and Allendorf. *People v. Baca,* Colo., 600 P.2d 770 (1979)."

\*      \*      \*      \*      \*      \*

"In this case, the evidence shows that Officer Dill did not have all of the information available to other members of the Denver Police Department at the time he arrested Defendant Eichelberger. However, the Denver Police Department as a whole possessed information sufficient to withstand the test of probable cause, since 1) it was clear that a death had occurred, involving possible arson, 2) this defendant was seen leaving the room of the victim shortly before smoke being detected therein, 3) this defendant and the victim had fought earlier in the day, 4) the arrest occurred shortly after dis-

covery of the fire and victim, 5) the name of the defendant was known to Officer Dill as "Jack", 6) the defendant wore a colostomy bag, and 7) similar descriptions of defendant were given to police officers by two witnesses."

None of the foregoing facts, alone, rises to the level of probable cause, but the facts known to the police, taken as a whole, provided probable cause to arrest.[2] *See People v. Branin*, 188 Colo. 235, 533 P.2d 1138 (1975).

Accordingly, we reverse the ruling of the trial court which suppressed statements and evidence, and remand for further proceedings consistent with this opinion.

[2.] We note that one of the purposes of the exclusionary rule is to deter willful or flagrant actions by the police. The rule is not intended as a barrier to prevent the police from carrying out their functions and duties when the police action is reasonable. *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980).